IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAGIC SLEEP MATTRESS CO., INC. ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 16 C 7411 |
| ) | |
| NORTHFIELD INSURANCE CO., ) | Judge Virginia M. Kendall |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Even though at least seven of Defendant, Northfield Insurance Company's employees and the Corporation Service Company (CSC)—Northfield's Agent for Service—had notice of this lawsuit, Northfield contends that its failure to defend itself when Plaintiff Magic Sleep Mattress Company, Inc., filed its Complaint is solely Sharon Brooks's fault. Brooks is the manager of the Service of Process department of Northfield's parent company and she notified six other employees of the lawsuit and none responded to it during the time allotted and then Northfield waited two months before filing a motion to vacate the default entered against it even after receiving notice of that default and prior to the judgment being entered in a dollar amount. On February 3, 2017, the Court denied Northfield's Motion to Vacate Default Order, Default Judgment, and Judgement. [28.] Northfield now asks the Court to reconsider its decision based on both alleged legal and factual error. But nothing has changed. Northfield had the opportunity to defend itself in this action and did not have good cause for its failure to do so; the Court will not waste further judicial resources on the issue.

# BACKGROUND[1]

Plaintiff Magic Sleep filed a Complaint on July 2016 against Northfield, its commercial property insurance carrier, alleging underpayment of purported hail damage to three of Magic Sleep's buildings. Northfield's senior administrative assistant of corporate legal, Ms. Tutewohl-Smith accepted service of process of Magic Sleep's Summons and Complaint. (Dkt. 16 at 4-5.) Tutewohl-Smith scanned the documents and sent them by attachment to a Service of Process Coordinator, a Senior Service of Process Coordinator, and Sharon Brooks, the Manager of the Service of Process Unit for Northfield's parent company. (*Id.*) Brooks was out of the office, so her response email directed Tutewohl-Smith to forward the email to two paralegals, which Tutewohl-Smith did. Brooks saw the email the next day and when she responded to Tutewohl-Smith's email, she hit "reply to all" and added Wilma Delgado, a litigation analyst in the Service of Process Unit. (*Id.*) In the "reply all" email, Brooks instructed Delgado to send the Summons and Complaint to CSC, Northfield's Service Agent, for upload. But Brooks failed to attach the Summons and Complaint to the email when she hit "reply to all." (*Id.*) Delgado did not notice that the Complaint was not attached but still forwarded the email to CSC. CSC also somehow never noticed the attachment was missing, did not upload the Complaint on its document management grid, but still moved the email to a "completed" folder.

When Northfield failed to answer or otherwise respond to Magic Sleep's Complaint, the Court entered an order of default on August 18, 2016 and Northfield failed to appear or respond to that order. On September 2, 2016, the Court granted a default judgment against Northfield in the amount of $1,141,424.15. On October 3, 2016, Magic Sleep faxed a letter to Northfield enclosing a copy of the judgment. In response to the fax, Northfield hired counsel and began

---

[1] The Court provided a brief recitation of the facts in its previous Order. Because Northfield alleges that the Court failed to consider certain facts, the Court will provide further recitation here.

investigating the circumstances surrounding the delay. Then, on October 14, 2016, Northfield brought a motion pursuant to Federal Rule of Civil Procedure 60(b) to vacate the Court's order of default, the default judgment, and the judgment. (Dkt. 16.)

In reviewing Northfield's 60(b) motion, the Court held that Northfield's reason for failing to defend itself did not satisfy good cause, that Northfield's failure to respond to the default until two months after it was entered did not constitute quick action, and while Northfield contends that there was a bona fide insurance dispute, the alleged defense was not enough to excuse Northfield's actions leading to the default.

## STANDARD OF REVIEW

Because the substance of its motion challenges the merits of this Court's decision, the motion must either fall under either Rule 59(e) or Rule 60(b). *See United States v. Deutsch*, 981 F.2d 299, 300 (7th Cir. 1992). Whether a motion is analyzed under Rule 59(e) or Rule 60(b) depends on the substance of the motion. *See Obreicht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008). Northfield's motion is based on alleged errors of law and fact—bases encompassed by Rule 59(e)—and the Court therefore evaluates it under Rule 59(e). *See id.* at 493-94.

To prevail on a motion for reconsideration brought pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, the "movant must present either newly discovered evidence or established manifest error of law or fact." *See Oto v. Metropolitan Life Ins.*, 224 F.3d 601, 606 (7th Cir. 2000) (citing *LB Credit Corps v. Resolution Trust Corps*, 49 F.3d 1263 (7th Cir. 1995)). "Manifest error" means "the wholesale disregard, misapplication, or failure to recognize controlling precedent," not simply disappointment of the losing party. *Id*. (citing *Sedrak v. Callahan*, 982 F. Supp. 1063, 1069 (N.D. Ill. 1997)). The party moving for reconsideration bears the burden of establishing that the Court should reverse its prior judgment. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Rule 59 is

not a tool for parties to relitigate arguments or present new evidence that could have been raised initially. *See id.*; *Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007). The decision to grant a Rule 59(e) motion lies in the sound discretion of this Court, and its ruling is reviewed deferentially and will only be disturbed upon a showing that the Court abused that discretion. *See Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Billups v. Methodist Hosp.*, 922 F.2d 1300, 1305 (7th Cir. 1991).

**DISCUSSION**

Northfield does not raise any new evidence or legal arguments. Instead, Northfield brings its motion under Rule 59(e) asserting that the Court committed both legal and factual error. But Northfield does not raise any new facts the Court did not already consider in its previous Order and Northfield misunderstands the Court's application of the law to these facts.

**A.    Factual Errors**

Northfield asserts that in the "background" section of its Order, the Court failed to consider certain facts. Northfield also contends that, in particular, this improperly impacted the Court's "good cause" and "quick action" analyses. *See Pretzel & Stouffer v. Imperial Adjusters*, 28 F.3d 42, 47 (7th Cir. 1994) (In order to have an entry of default vacated, the moving party must demonstrate good cause for the default; quick action to correct it; and a meritorious defense to the complaint.) The Court will now address these allegedly ignored facts.

According to Northfield, the Court failed to consider its general practice and procedures, specifically that when Brooks normally hits "reply to all" after receiving a complaint, she reattaches the complaint to that email. (Dkt. 30 at 3.) It is common sense that Northfield would not have a practice of sending emails with unintentionally missing attachments. But throughout its Motion, Northfield mistakenly assumes that it is held accountable for Brooks's initial failure

4

to attach the Complaint to her email to Delgado. Instead, the relevant failure is that of every person after her, as well as CSC, for the failure to follow up and rectify the situation. More importantly, the original email states the title of the case (Magic Sleep Mattress Company Inc v. Northfield Insurance Company) in the subject line of the email and the body of the email reads: "Attached is the Summons & Complaint regarding "Magic Sleep Mattress Company Inc. v. Northfield Insurance Company that was served today (6/21/16). Therefore, ALL individuals on the string of emails were aware that the Complaint was served on June 21, 2016 and that it existed. Simply because it was not attached to the email does not mean they were unaware of the filing – all they needed to do was ask for a copy of the Complaint for review. A simple reply email (seen nearly daily in any business practice) would have sufficed: "No Attachment."

Northfield also contends that the Court failed to consider that Brooks sent a separate email to Tutewohl-Smith, Jennifer Abramo, and Laurie LeBel, with a carbon copy to Rachel Post and Pamela J. Beyer advising, "All set – sent to Wilma [litigation analyst] this morning." But this is another fact that the Court considered but does not help Northfield. (Dkt. 30 at 3.) This fact only further confirms that multiple Northfield employees knew of the lawsuit based on several emails circulated among them, but did nothing until two months after a default was entered. Specifically, Post, a Service Process Coordinator, and Beyer, the Senior Service Process Coordinator, received the "reply to all" email from Brooks that did not include an attachment. Therefore, they had reason to question this second email from Brooks stating that they were "all set." Similarly, Northfield argues that the Court was incorrect in its statement that at least seven employees failed to ensure the Complaint was uploaded to the necessary system. (Dkt. 30 at 8.) Northfield states that in its general practice and procedures, only the Manager, Senior Service of Process Coordinator, or Service of Process Coordinator forward the Summons and Complaint by

5

email to the litigation analyst with instructions to send to CSC. (Dkt. 30 at 8.) Therefore, Northfield concludes that "the other four Northfield employees mentioned in connection with this matter would have absolutely no involvement in ensuring that a Complaint is uploaded to the necessary system." (Dkt. 30 at 8.) Even if it was not these employees' responsibility to upload the Complaint to CSC's document management grid, the point is that at least seven employees had notice of the lawsuit after Northfield was served. And any of these employees on the "reply to all" email had the opportunity to catch the mistake before it was sent to CSC and could have ensured it was uploaded.

Next, Northfield asserts that the Court failed to acknowledge that the Complaint had not been uploaded to CSC's document management grid. (Dkt. 30 at 3.) The Court acknowledged that CSC never received an email without the attached Complaint and yet, for a reason *still* not explained by Northfield, CSC moved the email to a completed folder. (Dkt. 28 at 2.). CSC's failure to upload a document to the management grid and still marked the task as completed is perhaps the most puzzling fact in Northfield's good cause defense. Northfield does not explain its relationship to CSC in any detail, nevertheless, presumably it is the duty of its Service Agentto ensure that there are mechanisms in place so that Northfield does not forget to defend itself. The Court did not fail to consider these facts; instead, CSC's failures were a significant basis of the decision not to vacate the judgment. (*See* Dkt. 28 at 3) (citing *Choice Hotels Int'l, Inc. v. Grover,* 792 F.3d 753, 754 (7th Cir. 2015), cert. denied, 136 S. Ct. 691 (2015) ("[T]he acts and omissions of [defendant's] chosen agents" is not a defense to the default.) [2]

---

[2] Not only were seven employees and its Service Agent aware the Complaint was served, there were also other ways Northfield's agents might have known of the lawsuit, but Northfield concludes that the Court took an improper action by referring to the Westlaw Journal of Bad Faith on August 3, 2016 (mistakenly referring to "2010" in its prior Order) that published details of Magic Sleep's lawsuit. The article in the Westlaw Journal was not a fact the Court meaningfully relied on in its decision. But Northfield goes into a long analysis about how relying on "the unsubstantiated Declaration of Magic Sleep's counsel was not proper." (Dkt. 30 at 10.) The Declaration pointed the Court to the article. The Court did not need to rely on any self-serving statements. Many companies create word-

6

The facts, according to Northfield, also demonstrate that it took quick action to cure its default. Default was entered on August 11, 2016 and Northfield did not respond to the default until October 14, 2016. Northfield insists that it did not learn of the default until October 3. But the problem with its argument is that Northfield had known of the lawsuit since July and had done nothing.

Finally, despite Northfield's assertions, Magic Sleep's position on how it would be prejudiced if the Order was vacated is not inconsistent and Northfield does not raise any factual errors made in the prejudice analysis. Northfield contends that Magic Sleep simultaneously states that it was unable to make repairs and that Magic Sleep was allegedly prejudiced because it had already made repairs. According to Magic Sleep, it was initially reluctant to repair and did not want to destroy evidence, but after the default judgment was entered, Magic Sleep began making more permanent repairs. (Dkt. 34 at 14.) This is logical and consistent. Northfield is also incorrect that the prejudice analysis relied on the best evidence rule. (Dkt. 30 at 11.) Simply stated, evidence is not available that was prior to the entry of the default and therefore Magic Sleep would be prejudiced in attempting to prove their case.

**B.     Legal Errors**

Northfield asserts that disregarding the "tendency" in the Seventh Circuit to require a showing of "willfulness" in refusing to vacate a default judgment and that the Court relied on distinguishable cases in its Order. (Dkt. 30 at 4.) Northfield cites to three cases in the section of its Motion explaining the Seventh Circuit's "tendency": a 1993 United States Supreme Court case, *Pioneer Inv. Service Co. v. Brunswick Associates, Ltd. P'ship*, 507 U.S. 380, 393 (1993); a

---

search alerts and track publications to stay updated when the company is in the news. The publication of the article simply suggests that Northfield had both actual notice of the lawsuit through Magic Sleep's proper service of the Complaint and Summons and that, beyond this service, there were ways that Northfield could have learned of the lawsuit in between service and default.

1994 Seventh Circuit case, *Matter of Singson*, 41 F.3d 316 (7th Cir. 1994); and a case from the Southern District of Illinois in 2008, *Hamilton v. Illinois Central Railroad Co*., 2008 U.S. Dist. LEXIS 838 (S.D. Ill. 2008). *Pioneer* gave district courts the discretion to apply "excusable neglect" flexibly, but does not hold that a showing of "willfulness" is necessary for a Court to enforce a default. The other two cases cited are similarly unhelpful to Northfield: *Singson*, a bankruptcy case analyzed under the Federal Rules of Bankruptcy Procedure, does not touch on default judgments or the Rules of Civil Procedure relevant to this case and *Hamilton* is not precedential and does not show a "tendency" within the Circuit.

Northfield also cites to two cases in a footnote from the Seventh Circuit in 2007, *Sims v. EGA Prods*., 475 F.3d 865, 868 (7th Cir. 2007) and *Yong-Qian Sun v. Bd. of Trs*., 473 F.3d 799, 811 (7th Cir. 2007). Both cases are factually distinguishable. In *Sims*, a magistrate judge entered an order of default for $31 million. 475 F.3d at 866. The district court reopened the case after default because the award was disproportionate but held open the possibility that "a more appropriate sanction might be in order." *Id*. Neither the district court nor appellate court analyzed whether the defaulting party was willful in its actions. And there is no similar issue of the proportionality of the amount of the judgment for the Court to review here. *Yong-Qian Sun* is the only precedential case cited and discusses "willfulness" in its analysis. But the facts again are not similar to the instant case as the default was based on the defaulting party's attorney's failure to comply with discovery orders. There, it was improper that the district court had not directly given the party any notice of sanctions taken against the lawyer before entering default. *Yong-Qian Sun* 473 F.3d at 811. Here, Northfield had direct notice of the lawsuit and the default was not due to a breakdown in communication that was outside of Northfield's control.

Nevertheless, Northfield is correct that there is a pronouncement in *Yong-Qian Sun* that default is "appropriate only when a party willfully disregards pending litigation." 473 F.3d at 811. But this case does not reflect a "tendency" in the Seventh Circuit. Instead, excusable neglect is the "touchstone" of the analysis. *Jones v. Phipps*, 39 F.3d 158, 164 (7th Cir. 1994). The Court in its previous order focused on the fact that Northfield's neglect was not excusable. *See, e.g., Moje v. Fed. Hockey League, LLC,* 792 F.3d 756, 757 (7th Cir. 2015) (denying a party's Rule 60 motion because a lawyer's failure to file essential documents did not constitute excusable neglect on the part of defendant); *C.f. Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 614 (7th Cir. 1987) (Vacating default judgment appropriate when complaint was served to defendant by mail but defendant never received it.) And, while *Yong-Qian Sun* discusses willfulness, plenty of cases in this Circuit do not, including those 2015 cases cited in the Court's previous Order. *See Moje*, 792 F.3d 756; *see also Choice Hotels Int'l,* 792 F.3d at 754. Perhaps this is because "[t]he standards contained in the [default judgment] cases are justifiably vague, requiring extraordinary circumstances as a sufficient condition to justify disturbing a default judgment[.]" *Jones*, 39 F.3d at 164.

Northfield also presumes that the Court in its previous holding determined that Northfield's actions were not willful. The Court found that Northfield's actions were not done in malice but it did not make a determination on whether Northfield was willful. Indeed, "willful" is defined as "voluntary and intentional but *not necessarily malicious*." BLACK'S LAW DICTIONARY (9th Ed. 2009) (emphasis added). By Northfield's own definition, its actions were willful. In summarizing the case law cited in the Court's order, Northfield asserts that "in each of the decisions cited by the Court … the courts found that the defaulted party had actual notice that the lawsuit was pending, but nevertheless *willfully* chose not to fulfill their duties, including

failing to file responsive pleadings, failing to attend hearings, failing to obey various court orders, failing to respond to discovery requests, or otherwise failing to protect themselves in litigation." (Dkt. 30 at 5.) Northfield undoubtedly had actual notice of the lawsuit. There is no dispute that Northfield was properly served and, it bears repeating that *several* Northfield agents had knowledge the lawsuit was pending. But, despite notice of the suit, Northfield failed to "file a responsive pleading" to the Complaint, "failed to attend hearings," and "failed to protect itself in the litigation." Northfield's actions were willful. *See also Davis v. Hutchins,* 321 F.3d 641, 646 (7th Cir. 2003) ("We have noted that this willfulness is shown in a party's continuing disregard for the litigation or for the procedures of the court.") (internal citation omitted.)

In its Order, the Court discussed that shifting the blame to one's agents is not a defense to default. Northfield argues that these cases were distinguishable because, in those cases, the agent who caused the default was the defaulting party's attorney. But, as the Court explicitly mentioned in its Order, as compared to those cases in which an attorney caused the default, "the facts are even worse for Northfield because the agents who made (at least some) of the mistakes were not the party's attorney, but instead, the party itself." (Dkt. 28 at 3, ftnt. 2.). Northfield also fails to distinguish how blaming CSC, its Agent of Service, for its failure to upload the Complaint to its document management grid is distinct, under these circumstances, from blaming one's attorney. A consideration in the analyses in those cases was that the defaulting party may seek relief directly from the attorney who failed. *See Choice Hotels* Int'l, 792 F.3d at 754 ("[T]he remedy for legal neglect lies in a malpractice suit against the lawyer, rather than continuing the original litigation and upsetting the adversary's legitimate expectations based on a final judgment"); see *also Moje*, 792 F.3d at 759. Northfield also is able to seek relief for the

alleged failure of its agent to fulfill its duties, but Magic Sleep should not suffer for CSC's failure.

## **CONCLUSION**

For those reasons, Defendant Northfield Insurance Company's Motion to Reconsider [28] is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 5/18/2017